IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSHUA JAMES ROBERTSON,**

        **Plaintiff,**

      v.                                              CASE NO. 18-3014-SAC

**KESHIA LEE, et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

    This matter is a civil rights action filed under 42 U.S.C. § 1983 by a prisoner in state custody. Defendants filed a motion to dismiss, or, in the alternative, for summary judgment, and plaintiff has filed a response. For the reasons that follow, the Court grants the motion for summary judgment.

### Background

    On or about October 26, 2017, officers in the mailroom of the Lansing Correctional Facility (LCF) rejected a letter sent to plaintiff by his mother and marked "Legal Mail." The return address on the envelope read:

> Mother of Joshua James Robertson (John 15:13)
> Inmate #76205 In Care of
> [residential address of sender]

    Shortly afterwards, the LCF mailroom received approximately 17 more envelopes from plaintiff's mother marked as legal mail and identifying her as the sender. Each of the envelopes contained copied materials from a book. Defendants Lee, a staff member in the mailroom, and Winkelbauer, the deputy warden, reviewed these materials and determined the multiple mailings were intended to avoid the

requirement under Kansas law that books mailed to prisoners be sent from a publisher or vendor.

The first envelope was returned to the sender marked "Return to Sender" with the stamped notation, "Books, Calendars, Newspapers and Magazines must come from the Publisher or Vendor."

Although LCF officials failed to issue a notice of censorship to plaintiff concerning the first letter from his mother, he learned of the rejection from her and filed a grievance. The first response to the grievance stated that the letter "contained copies of a book. The materials were reviewed and determined that they needed to be returned to the sender. Additionally, the envelope weighed more than 1 ounce."

Plaintiff appealed to the warden, whose response affirmed the rejection, stated that the envelope explained the reason for the rejection, and added, "Several other 9" x 12" envelopes were also rejected for excess weight and copied book pages."

Plaintiff then appealed to the Secretary, who found that, although the institution erred in failing to issue a notice of censorship, plaintiff had challenged the censorship through the grievance procedure. The response upheld the rejection.

Plaintiff did not file grievances concerning the remaining envelopes.

Finally, plaintiff presents a claim that defendants substantially burdened his religious exercise by depriving him of the December 2017 and January 2018 issues of Sapphires, a daily devotional published by Hope of the World, a Messianic Jewish Ministry.

## Discussion

### Motions pending before the court

The Court first addresses the pending non-dispositive motions.

*Plaintiff's motion for court order (Doc. 28)*

Plaintiff seeks an order directing counsel for the Kansas Department of Corrections to include in the *Martinez* report[1] evidence and contents of a mailing from his mother that was censored on October 5, 2018. Attachments show that plaintiff received a notice of mail censorship on the same day. The notice identified the grounds for the censorship as (1) the publication was not received from a vendor; (2) the weight exceeded the one ounce limit; and (3) the mailing contained legal materials that were not sent from a legal source (Doc. 28, Att. p. 2).

The Court denies this request. In light of the Court's resolution of this action, the addition sought by plaintiff, concerning another item of mail from his mother identified as legal mail, is futile.

*Plaintiff's motion to amend complaint (Doc. 33)*

Plaintiff filed a motion to amend which seeks to add a claim arising under state law and alleging a deprivation of property caused by the return of the purported legal mail sent by his mother. The Court finds this claim is legally frivolous and denies the motion to amend the complaint.

*Plaintiff's motion to strike clerk's order extending time and motion to recuse (Doc. 37)*

On January 8, 2019, plaintiff filed a combined motion to recuse and motion to strike the clerk's order extending time to answer. The rules of the District of Kansas allow the clerk of the court to grant certain orders, including orders extending for 14 days the time to

---

[1] Under *Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978)(per curiam), district courts may direct prison officials to investigate prisoners' allegations. The purpose of the *Martinez* report is to determine whether there is factual as well as legal support for the claims. *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).

answer or otherwise plead to a complaint. D. Kan. R. 77.2(a)(2). The clerk's order in this matter was issued in compliance with that rule, and plaintiff is not entitled to relief.

Plaintiff also moves for recusal, citing the delay in ruling on his motion to amend. Two statutes govern judicial recusal, 28 U.S.C. §§ 144 and 455. *Burleson v. Spring PCS Group*, 123 F. App'x 957, 959 (10th Cir. 2005). For recusal under §144, the moving party must submit an affidavit showing bias and prejudice. *Id*. (citing *Glass v. Pfeffer*, 849 F.2d 1261, 1267 (10th Cir. 1988)). The bias and prejudice must be personal, extrajudicial, and identified by "facts of time, place, persons, occasions, and circumstances." *Id*. at 960 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). The facts will be accepted as true, but they must be more than conclusions, rumors, beliefs, and opinions. *Id*. Without an affidavit showing bias or prejudice and proper identification of events indicating a personal and extrajudicial bias, a plaintiff does not support a request for recusal under 28 U.S.C. § 144.

Under 28 U.S.C. § 455(a) and (b)(1), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(a) and (b)(1).

A judge has as strong a duty to preside in a case where there is no legitimate reason for recusal as a duty to recuse when the circumstances require it. *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). The Court is familiar with the case, has considered the record, and finds plaintiff makes only broad allegations that do not show bias or prejudice. Likewise, the Court finds no reason to recuse on the ground that its impartiality is reasonably in question.

Accordingly, the Court declines to grant the request for recusal.

*Defendants' motion for extension of time to answer (Doc. 38)*

On January 18, 2019, defendants filed a motion for extension of time to file an answer. The Court grants the motion and notes that defendants filed a motion to dismiss or, in the alternative, for summary judgment on January 31, 2019.

*Defendants' motion to stay discovery (Doc. 42)*

Defendants move for a stay of discovery (Doc. 42). The District of Kansas has a general policy that a pending dispositive motion does not require a stay of discovery. *See Wolf v. United States*, 157 F.R.D. 296, 297-98 (D. Kan. 1994). There are four exceptions to this policy, namely, discovery may be stayed if the case is likely to be resolved through the dispositive motion; the facts to be developed through discovery would not affect the resolution of the dispositive motion; the discovery would be unduly burdensome; or the dispositive motion presents issues concerning a defendant's immunity from suit. *Citizens for Objective Public Educ. Inc. v. Kansas State Bd. of Educ.*, 2013 WL 6728323, *1 (D. Kan. Dec. 19, 2013); *see also Kutilek v. Gannon*, 132 F.R.D. 296, 297-98 (D.Kan. 1990).

In this case, defendants assert a defense of qualified immunity, and the Court grants the request to stay discovery. *See Siegert v. Gilley*, 500 U.S. 226, 232-33 (1991)(discovery and pretrial proceedings should not go forward until threshold immunity question is resolved); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992)(where defendant asserts qualified immunity defense, court should grant request to stay discovery pending ruling on that issue).

*Plaintiff's motion for extension of time to respond to defendants' dispositive motion (Doc. 44)*

On February 4, 2019, plaintiff moved for an extension of time to respond to defendants' motion to dismiss or summary judgment (Doc. 44). The Court grants the motion and notes that plaintiff filed the response on February 18, 2019.

**Summary judgment standard**

Summary judgment provides a means of testing whether the available evidence would allow a reasonable jury to find in favor of a party presenting a claim. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id*.

A party moving for summary judgment has the burden of showing that the undisputed material facts entitle it to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party carries the initial burden, the opposing party must "go beyond the pleadings and designate specific facts" that would be admissible at trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

The court then must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

A court considering a motion for summary judgment views the evidence and the inferences supported by the record in the light most favorable to the nonmoving party. *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005). There must be more than a scintilla of evidence to support the position of the nonmoving party; rather, "there must be evidence on which the [trier of fact] could reasonably find for the [nonmoving party]." *Celotex*, 477 U.S. at 322.

When a defendant raises the defense of qualified immunity on summary judgment, "the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).

Defendants seek summary judgment on the following grounds: first, plaintiff has failed to exhaust administrative remedies on claims except those related to the first letter, received on or about October 26, 2017; next, they seek dismissal of plaintiff's claims against defendants in their official capacity as barred by the Eleventh Amendment; third, they allege the complaint fails to support a plausible claim that defendants Burris, Cline, Shipman, Wagner, and Winkelbauer personally participated in the alleged violation of plaintiff's rights; fourth, they allege a failure to state a claim for relief; fifth, they assert that defendants are entitled to qualified immunity; finally, they allege amendment is futile due to plaintiff's failure to exhaust available remedies on any other alleged violations.

The Court considers these grounds in order.

**The failure to exhaust**

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust available administrative remedies before commencing a federal lawsuit. 42 U.S.C. § 1997e(a). "[T]o properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the applicable procedural rules – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007)(internal citation and quotation marks omitted).

Prisoners in the custody of the Kansas Department of Corrections normally must use the four-part grievance procedure set out in K.A.R. 44-15-101. This regulation requires a prisoner to first attempt to informally resolve the matter with staff members in the unit team. K.A.R. 44-15-101(b). If the informal attempt is unsuccessful, the prisoner then uses the formal, three-tiered grievance process which requires a written grievance first to the unit team, next to the warden, and finally to the office of the secretary of corrections. K.A.R. 44-15-101(d).

Plaintiff filed Grievance No. AA20180249 on November 2, 2017, after he learned from his mother that her first letter to him identified as legal mail had been returned. It is clear that he completed all phases of the grievance procedure concerning the initial piece of mail rejected by the LCF mailroom (Doc. 30, Ex. 2).

The plaintiff did not pursue grievances concerning the remaining envelopes rejected in late October 2017, although they were addressed briefly in the grievance response prepared by the warden (Doc. 1, Att. p. 6). The Court will deem this claim exhausted and has considered

those materials in its evaluation of plaintiff's claims.

Defendants have presented evidence that plaintiff did not submit a grievance concerning the December 2017 and January 2018 issues of Sapphires (Doc. 41, Ex. 1, Burris decl.). These materials were not censored by the Department of Corrections, and plaintiff does not argue that he filed a grievance or property claim concerning them. The Court therefore finds the claim concerning these items must be dismissed for failure to exhaust administrative remedies.

**Eleventh Amendment immunity**

The Eleventh Amendment bars actions against states and state entities in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). Claims against state officials in their official capacities are viewed as claims against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."). Plaintiff's claims for damages against defendants in their official capacities therefore are dismissed.

**Personal participation**

An essential element of a civil rights claim against an individual is that person's direct, personal participation in acts or omissions upon which the complaint is based. *Graham*, 473 U.S. at 166. It is settled that "§ 1983 does not recognize a concept of strict supervisory liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to . . . §1983

suits, a plaintiff must plead that each Government-official defendant, through the individual's own actions, has violated the Constitution.").

An individual official's participation in the denial of administrative grievances is insufficient to establish personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)(the "denial of a grievance, by itself, without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983.").

The Court has considered the record and finds support for the personal participation of defendants Lee and Winkelbauer, who met to review the materials sent to plaintiff and determined they violated the publications policy. *See* Doc. 30, Ex. 3, Lee affidavit. The remaining defendants, namely, Shipman, Wagner, Cline, and Burris will be dismissed.

**Qualified immunity**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014)(internal citation and punctuation omitted). *See Elder v. Holloway*, 510 U.S. 510, 514 (1994)("The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'")(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

A dispositive motion based on qualified immunity places the burden on the plaintiff to show that a constitutional violation

occurred and that the right was clearly established when the violation occurred. *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009)(quotations omitted).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, ___ U.S. ___, 136 S.Ct. 305, 308 (2015)(per curiam)(quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff must show that there is Supreme Court or Tenth Circuit precedent on point or that there is a "clearly established weight of authority from other courts [that] have found the law to be as the plaintiff maintains." *Klein v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)(quotations omitted). In this context, "the salient question … is whether the state of the law … gave [defendants] fair warning that their alleged treatment of [plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

The Court incorporates its discussion of whether the defendants are entitled to qualified immunity in the discussion of whether plaintiff fails to state a claim for relief.

### Failure to state a claim for relief

To state a claim for relief under § 1983, a plaintiff must allege acts by government officials, acting under color of law, that caused the deprivation of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's claim implicates the First Amendment right of free speech. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*

*v. Procunier*, 417 U.S. 817, 822 (1974). The federal courts, however, have upheld the censorship of inmate mail where it is supported by legitimate penological interests. *See Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

Here, the defendant officials rejected plaintiff's incoming mail on dual grounds, namely, that the material was over the one-ounce limit, and that it appeared to be an attempt to avoid the requirement that a book must be obtained directly from the publisher or vendor.

Mail sent to Kansas inmates is governed by K.A.R. 44-12-601, *Mail*. At least two provisions are relevant to the action here. First, subsection 44-12-601(g) governs publications and provides, in part,

> "[o]nly books, newspapers, and periodicals received directly from a publisher or a vendor shall be accepted. However, an inmate shall be permitted to receive printed material, including newspaper and magazine clippings, if the material is included as part of a first-class letter that does not exceed one ounce in total weight."

K.A.R. 44-12-601(g)(1).

Second, the regulation defines "legal mail" in 44-12-601(a)(1)(A) as follows:

> (1)(A) "Legal mail" means mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of a lawyer or law firm, legal clinic, or legal services organization, including legal services for prisoners.

The courts have upheld publisher-only regulations. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 549-50 (1979)(recognizing that hardbound books present security concerns and are conducive to the introduction of contraband); and *Jones v. Salt Lake Cty*, 503 F.3d 1147,

1156-57 (10th Cir. 2007)(upholding county jail's prohibition on hardbound and paperback books received from outside the facility).

Here, prison officials were faced with multiple envelopes, sent between the same parties on the same day, and containing a large amount of photocopies of legal materials.

Although the weight of each envelope may have been slightly below the one ounce limit[2], in light of the multiple envelopes mailed at the same time from the same person, it was reasonable for defendants to consider the material as a whole in evaluating whether the mailing was intended to avoid restrictions. Also, given the unusual circumstances and volume of the mailings to plaintiff, the Court finds the decision of the defendants to reject the mailings as an effort to skirt the regulations was reasonable. Finally, the sender's identification of the mail as "legal mail" was, at best, erroneous, and provides additional support for the rejection.

Defendants acknowledge error in the failure to issue a censorship notice to plaintiff concerning the rejection of the October 26 correspondence. But despite that error, which would have allowed him to protest the censorship before the materials were returned, he was able to use the grievance procedure to challenge that decision.

After careful consideration of the record, the Court concludes the defendants are entitled to qualified immunity in this action, and

---

[2] *See* Doc. 32, Ex. 2, affidavit of Sarah Bishop and attachments, showing mailing of 14 envelopes, each weighing 0.9 ounces at the time postage was issued. A letter mailed to plaintiff by his mother dated October 23, 2017, reads, in part, "I just put sixty-six (66) pages into the mail for you this morning in fourteen (14) envelopes…. I am sending a total of sixteen (16) pages in four envelopes this afternoon." *Id.*, Ex. 1.

that their actions did not violate plaintiff's protected rights despite the error in procedure. The Court therefore will enter summary judgment for defendants.

IT IS, THEREFORE, BY THE COURT ORDERED plaintiff's claim concerning the nondelivery of two issues of Sapphires is denied for failure to exhaust administrative remedies; defendants Shipman, Wagner, Cline, and Burris are dismissed for lack of personal participation; and defendants' motion to dismiss, or, in the alternative, for summary judgment (Doc. 40) is granted as to defendants Lee and Winkelbauer.

IT IS FURTHER ORDERED plaintiff's motion for court order (Doc. 28) is denied.

IT IS FURTHER ORDERED plaintiff's motion to amend complaint (Doc. 33) is denied.

IT IS FURTHER ORDERED plaintiff's combined motion to strike clerk's order extending time and for recusal (Doc. 37) is denied.

IT IS FURTHER ORDERED defendants' motion for extension of time (Doc. 38) is granted.

IT IS FURTHER ORDERED defendants' motion to stay discovery (Doc. 42) is granted.

IT IS FURTHER ORDERED plaintiff's motion for extension of time (Doc. 44) is granted.

**IT IS SO ORDERED.**

DATED: This 8th day of July, 2019, at Topeka, Kansas.

S/ Sam A. Crow
SAM A. CROW
U.S. Senior District Judge